IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

```
KATHERINE G. AVERY,            )
                               )
              Plaintiff,       )
                               )
vs.                            )    Case No. 07-1263-MLB
                               )
MICHAEL J. ASTRUE,             )
Commissioner of                )
Social Security,               )
                               )
              Defendant.       )
_____)
```

RECOMMENDATION AND REPORT

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the

1

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

   The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II. History of case**

On April 29, 2004, administrative law judge (ALJ) George M. Bock issued his decision that plaintiff was not disabled (R. at 17-27). Plaintiff sought judicial review of the agency decision. On August 31, 2005, Judge J. Thomas Marten reversed the decision of the agency and remanded the case for further hearing based on

4

the motion of the Commissioner (R. at 542-543).

On March 9, 2007, ALJ Linda Sybrant issued her decision (R. at 503-522). Plaintiff alleged disability since February 1, 2001 (R. at 504). Because of an ALJ decision issued on January 7, 2002 based on a separate application for disability, and ALJ Sybrant's decision not to reopen the determination of January 7, 2002, the issue before the ALJ was whether plaintiff was disabled on or after January 8, 2002 (R. at 504).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 8, 2002 (R. at 507). At step two, the ALJ found that plaintiff had severe impairments of club feet, post-polio syndrome, diffuse arthralgias in the back, knees and hips with objective evidence of mild degenerative changes, and high moderate to low extreme obesity. The ALJ further found that plaintiff's alcohol dependence/abuse and history of kidney removal are not severe impairments. The ALJ found no medically determinable evidence of carpal tunnel syndrome since January 8, 2002 (R. at 507).

At step three, the ALJ found that plaintiff's impairments did not meet or equal a listed impairment (R. at 513). After establishing plaintiff's RFC (R. at 518), the ALJ determined at step four that plaintiff could not perform past relevant work since January 8, 2002 (R. at 518). At step five, the ALJ found that plaintiff could perform other work in the national economy

which exists in significant numbers; therefore, plaintiff was not disabled from January 8, 2002 through February 28, 2007 (R. at 519). Plaintiff turned 50 in March 2007 (R. at 505). Based on the regulations, the ALJ determined that plaintiff was therefore disabled as of March 1, 2007 because of her age and limitation to sedentary work (R. at 519). Plaintiff argues that the ALJ erred by not finding that plaintiff was disabled as of January 8, 2002 (Doc. 1 at 2).

**III. Did the ALJ err in his finding that plaintiff's carpal tunnel syndrome (CTS) was not a severe impairment?**

The burden of proof at step two is on the plaintiff. See Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis). A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis." Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity"). A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities.[1] Williams,844

---

[1] Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)], including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in

6

F.2d at 751. However, the claimant must show more than the mere presence of a condition or ailment. If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity. Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).

A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled. 20 C.F.R. § 404.1512(c), § 416.912(c). The evidence that a claimant has an impairment must come from acceptable medical sources including licensed physicians or psychologists. 20 C.F.R. § 404.1513(a), § 416.913(a). Evidence from other medical sources, including therapists, nurse-practitioners, and physicians' assistants, may be used to show the severity of an impairment and how it affects the ability to work. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).

The ALJ discussed medical examinations by Dr. Komes (Dec. 11, 2001), Dr. Mosier (Oct. 2, 2002), and Dr. Motoc (Oct. 12,

---

a routine work setting." Social Security Ruling 85-28, 1985 WL 56856 at *3.  Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004).

2002) (R. at 512). None of these physicians diagnosed CTS, or indicated any physical limitations due to CTS (R. at 333-334, 401-402, 406-408).

The ALJ acknowledged that Dr. Dagen had diagnosed carpal tunnel syndrome in 1998 (R. at 513, 244-246). The ALJ also referenced a report from Dr. Sharma on November 20, 2001 stating that plaintiff had "probable carpal tunnel syndrome" (R. at 332). However, the ALJ determined that the evidence did not establish a medically determinable impairment of CTS on a longitudinal basis, and particularly not during the period in question (R. at 513). Furthermore, Dr. Dagen's report did not indicate that plaintiff had limitations due to CTS; he only indicated she had upper extremity symptoms due to CTS. Dr. Dagen did indicate that plaintiff had weakness in her arms due to remote motor neuron disease, and opined that due to this condition, plaintiff could not lift or carry objects weighing more than 25 pounds. However, plaintiff had no difficulty handling light objects, and the coordination in her hands was described as reasonably good to near normal (R. at 246).[2] Plaintiff failed to cite to any medical evidence diagnosing CTS on or after January 8, 2002, or any medical opinion that plaintiff had physical limitations due

---

[2]The ALJ found that plaintiff had an RFC for sedentary work. Sedentary work involves lifting no more than 10 pounds at a time. 20 C.F.R. § 404.1567(a). Thus, the ALJ's RFC determination is not inconsistent with Dr. Dagen's opinion that plaintiff could not lift or carry objects weighing more than 25 pounds.

to CTS on or after that date.  Plaintiff does cite to an examination by Dr. Venkat on April 7, 2003 indicating that plaintiff had 40 lbs. of grip strength in her left hand and 20 lbs. of grip strength in her right hand although the plaintiff was right-handed (R. at 423).  By contrast, Dr. Motoc, on Oct. 12, 2002, found 10 lbs. of grip strength with the right hand and 40 lbs. of grip strength with the left hand (R. at 407); Dr. Komes found grip strength of 60 lbs. on the right and 70 lbs. on the left on Dec. 11, 2001 (R. at 333).  However Drs. Venkat, Motoc, and Komes never indicated that plaintiff had CTS, nor did they discuss the significance, if any, of the grip strength findings.  Dr. Venkat indicated that plaintiff did not have any difficulty in picking up a coin or opening a door, and that plaintiff could write her name without difficulty (R. at 423).

   SSR 96-9p indicates that most unskilled sedentary work requires good use of both hands and the fingers for repetitive hand-finger actions.  Any significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base.  SSR 96-9p, 1996 WL 374185 at *8.  However, Dr. Dagen, who diagnosed CTS, stated that plaintiff "has no difficulty handling light objects and the coordination in her hands is reasonably good to near normal" (R. at 246).

9

There is no medical evidence that plaintiff was diagnosed with or treated for CTS on or after January 8, 2002. There is no medical evidence that plaintiff's CTS, even if it existed, would have more than a minimal effect on her ability to do basic work activities. Dr. Dagen did not list any limitations due to CTS, but did set forth a lifting and carrying limitation due to remote motor neuron disease. Those limitations are consistent with the ALJ's finding that plaintiff is limited to sedentary work. Finally, Dr. Dagen specifically stated that plaintiff has no difficulty handling light objects and that the coordination in her hands is reasonably good to near normal. Based on the evidentiary record, the court finds that substantial evidence supports the finding of the ALJ that plaintiff's CTS was not a severe impairment on or after January 8, 2002.

**IV. Did the ALJ err in his finding that plaintiff's impairments did not meet or equal a listed impairment?**

Plaintiff has the burden at step three of demonstrating, through medical evidence, that his/her impairments meet all of the specified medical criteria contained in a particular listing. Riddle v. Halter, 10 Fed. Appx. 665, 667 (10th Cir. March 22, 2001). An impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990). Because the listed impairments, if met, operate to cut off further inquiry,

they should not be read expansively. Caviness v. Apfel, 4 F. Supp.2d 813, 818 (S.D. Ind. 1998).

The ALJ is required to discuss the evidence and explain why he found that the plaintiff was not disabled at step three. This court should not properly engage in the task of weighing evidence in disability cases. The court's function is only to review the Commissioner's decision to determine whether her factual findings are supported by substantial evidence and whether she applied the correct legal standards. In the absence of ALJ findings supported by specific weighing of the evidence, the court cannot assess whether relevant evidence adequately supports the ALJ's conclusion that the plaintiff did not meet or equal any listed impairment. Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996).

At the hearing, Dr. Francis testified as a medical expert. He opined that plaintiff met or equaled listed impairments 1.02A, 11.04B, 11.07D, and 11.14 (R. at 654-658). The ALJ, despite the opinion of Dr. Francis, found that plaintiff did not meet or equal these listed impairments.

Listed impairment 1.02A states as follows:

> *Major dysfunction of a joint(s) (due to any cause):* Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging

of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

1.00B2b *What we mean by Inability to Ambulate Effectively*

(1) *Definition*. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. **Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities**...

(2) *To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2007 at 455, 451, emphasis added).

The ALJ rejected the testimony of Dr. Francis, stating that there is no support in the medical observations or complaints that plaintiff is unable to ambulate effectively as defined in the regulation (R. at 514). On December 11, 2001, Dr. Komes indicated that plaintiff does not use assistive devices to walk (R. at 333). On October 12, 2002, Dr. Motoc indicated that plaintiff does not make use of assistive devices (R. at 406). On April 7, 2003, Dr. Venkat indicated that plaintiff does not make use of assistive devices (R. at 422, 424). The inability to ambulate effectively is defined as the inability to ambulate without the use of hand-held assistive devices that limit the functioning of both upper extremities. Drs. Komes, Motoc, and Venkat indicated that plaintiff was not using assistive devices. The court therefore finds that substantial evidence existed in the record to support the finding of the ALJ that the medical records in the last 5 years do not demonstrate an inability to ambulate effectively as defined in the regulation. For this reason, substantial evidence supports the finding of the ALJ that plaintiff's impairments do not meet or equal listed impairment 1.02A.

Dr. Francis also testified that plaintiff's impairments meet or equal listed impairments 11.04B, 11.07D, and 11.14 (R. at 657-

13

658).  These impairments are as follows:

> 11.04 Central nervous system vascular accident. With one of the following more than 3 months post-vascular accident:...
>
> B. Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C).
> _____
>
> 11.07 Cerebral palsy. With:...
>
> D. Disorganization of motor function as described in 11.04B.
> _____
>
> 11.14 Peripheral neuropathies.
>
> With disorganization of motor function as described in 11.04B, in spite of prescribed treatment.
> _____
>
> 11.00(C) *Persistent disorganization of motor function* in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combination, frequently provides the sole or partial basis for decision in cases of neurological impairment. **The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.**

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2007 at 491-493, emphasis added).

The ALJ gave the following explanation for finding that plaintiff did not meet listed impairments 11.04B, 11.07D and

   11.14:

>On consideration of these listings, the Administrative Law Judge observes they all are resolved under Listing 11.04B, subject to section 11.00C. Consistent with the residual functional capacity finding below, the Administrative Law Judge finds the evidence in this case does not establish a sufficient "degree of interference with locomotion and/or interference with the use of fingers, hands, and arms" to warrant finding a neurological listing is met or equaled. In support of his neurological listing suggestion, Mr. Saunders [plaintiff's counsel] cited only one exhibit, a remote, May 20, 1998, consultative neurological examination report by Dr. Dagen, which was obtained by the State agency in conjunction with an earlier application. In this report, Dr. Dagen opined it was "impractical" for the claimant to lift weights greater than 25 pounds (i.e., at the lower end of the medium exertional range), which is consistent with the residual functional capacity finding herein. Regarding the section 11.00C consideration of "the degree of...interference with the use of fingers, hands, and arms," Dr. Dagen opined that the claimant had "no difficulty handling light objects and the coordination in her hands is reasonably good to near normal," which is consistent with an October 12, 2002, examination report stating the claimant's hobbies are painting and sewing. (Exh. 15F/167.) Dr. Dagen thought she would have difficulty standing more than 10 minutes or walking more than three blocks, which is compared to the claimant's testimony that she can stand at least 20 to 30 minutes and walk 1 ½ blocks. Therefore, apart from its remoteness from the period under consideration, the Administrative Law Judge finds Dr. Dagen's report does not support finding the claimant meets or equals a neurological listing. Mr. Saunders did not mention any other medical evidence at the supplemental hearing.

(R. at 515).

Although plaintiff presents evidence (in the form of the testimony of Dr. Francis) which could support a finding that plaintiff's impairments meet or equal one or more of these listed impairments, the court can neither reweigh the evidence nor substitute its judgment for that of the agency. White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). The ALJ cited to the medical evidence from Dr. Dagen to find that the evidence does not establish the degree of interference with locomotion and/or interference with the use of fingers, hands and arms to warrant a finding that 11.04B, 11.07D or 11.14 are met or equaled. As noted earlier, Dr. Dagen stated that plaintiff "has no difficulty handling light objects and the coordination in her hands is reasonably good to near normal" (R. at 246). There is evidence from which a reasonable factfinder could conclude that there is not a sufficient degree of interference with locomotion and/or interference with the use of fingers, hands and arms to warrant a finding that a neurological listing is met or equaled. None of the treating or examining physicians opined that plaintiff's impairments met or equaled a listed impairment. For this reason, the court finds substantial evidence supports the ALJ's finding that plaintiff's impairments do not meet or equal listed impairment 11.04B, 11.07D and 11.14.

**V.  Did the ALJ err in his credibility assessment of the**

**plaintiff?**

A reviewing court does not weigh the evidence and may not substitute its discretion for that of the agency. Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff. Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. Hardman v.

Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court. White, 287 F.3d at 909-910.

The ALJ discussed the evidence in detail pertaining to plaintiff's credibility (R. at 515-518), and then concluded as follows:

> A specific credibility finding is required. The Administrative Law Judge finds the claimant's testimony to be partially credible, particularly to the extent her lower extremity problems, particularly the pes cavus and great toe deformities (in combination with her obesity), preclude finding she can perform a job that requires much standing or walking. The Administrative Law Judge otherwise finds her testimony to be exaggerated, e.g., as to her statement that she "frequently" attends a free clinic and her assertion at ALJ Bock's hearing that she lies down most of the day in bed or on the couch due to "excruciating pain."

(R. at 518).

The ALJ discussed in detail the medical record which, contrary to plaintiff's representation of frequently attending the free clinic, showed a lack of recent medical treatment (R. at 507, 517). The court finds that the ALJ has accurately stated the frequency of medical contact, including that at the free clinic (R. at 6D, 591-604). The ALJ summarized the medical evidence, which did not support many of her alleged limitations,

18

and noted her lack of treatment in recent years (R. at 516-517). No treating or examining physician opined that plaintiff was disabled. Plaintiff testified that she could probably hold a job where she could sit most of the day, did not have to deal with weights, and could stand if she wanted to, except for problems associated with gripping and CTS (R. at 646). However, the medical evidence did not establish a severe impairment of CTS.

When reviewing the ALJ's credibility findings, the court will not reweigh the evidence or substitute its judgment for that of the Commissioner. <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1173 (10th Cir. 2005). After examining the record as a whole, the court finds that the ALJ's credibility findings are closely and affirmatively linked to substantial evidence.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be affirmed.

Copies of this recommendation and report shall be provided to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on May 1, 2008.

                                        s/John Thomas Reid
                                        JOHN THOMAS REID
                                        United States Magistrate Judge